607 S.E.2d 526

**STATE of West Virginia, Plaintiff Below, Appellee**

**v.**

**Brian Bush FERGUSON, Defendant Below, Appellant.**

**No. 31720.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 9, 2004.

Decided Dec. 3, 2004.

## I.

The appellant, Brian Bush Ferguson, was convicted of first degree murder in November of 2002. The jury did not recommend mercy and on February 24, 2003, the appellant was sentenced to life imprisonment without the possibility of parole. We discuss the relevant facts of the case and the applicable standards of review *infra* as part of our consideration of the issues raised on appeal.

## II.

### A.

■ The appellant argues that the trial court erred by admitting hearsay evidence about an altercation between the appellant and the victim prior to the incident in which the victim died.

This evidence came from friends of the victim, who testified at trial that the victim had told the friends that the appellant had threatened the victim with a knife during a heated conversation about the appellant's girlfriend. The trial court admitted the testimony about the victim's statements under the "excited utterance" exception to the hearsay rule, *W.Va. Rules of Evidence* 803(2).

■ *State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995), Syllabus Points 7 and 8, states:

7. In order to qualify as an excited utterance under *W.Va.R.Evid.* 803(2):(1) the declarant must have experienced a startling event or condition; (2) the declarant must have reacted while under the stress or excitement of that event and not from reflection and fabrication; and (3) the statement must relate to the startling event or condition.

8. Within a *W.Va.R.Evid.* 803(2) analysis, to assist in answering whether a statement was made while under the stress or excitement of the event and not from reflection and fabrication, several factors must be considered, including: (1) the lapse of time between the event and the declaration; (2) the age of the declarant; (3) the physical and mental state of the

Marcia Ashdown, Prosecuting Attorney, Perri DeChristopher, Assistant Prosecuting Attorney, Morgantown, West Virginia, Attorneys for Appellee.

James B. Zimarowski, Esq., Franklin D. Cleckley, Esq., Morgantown, West Virginia, Attorneys for Appellant.

PER CURIAM:

In the instant case, we affirm a first degree murder conviction.

declarant; (4) the characteristics of the event; and (5) the subject matter of the statements.

We have carefully reviewed the statements in question, which all of the evidence indicated were made by a person in an emotionally upset condition, just minutes after a frightening event. There was no evidence suggesting fabrication by the declarant. We agree with the trial court's conclusion that they were "excited utterances" and were admissible as such.

■ The appellant also argues that even if the victim's statements were "excited utterances," they were inadmissible as "testimonial hearsay," barred by the Confrontation Clause (*U.S. Constitution*, Amendment 6), as announced in the very recent case of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, we do not perceive that *Crawford's* largely unexplored ban on "testimonial hearsay" that has not been tested by cross-examination extends to the statements to non-official and non-investigatorial witnesses, made prior to and apart from any governmental investigation, that are issues in this case.

We therefore find no error in the circuit court's ruling on the admissibility of the hearsay statements about the knife incident.[1]

### B.

■ The appellant's next assignment of error asserts that the trial court erred in allowing the prosecution to place before the jury testimony and argument that amounted to commenting on the appellant's exercise of his constitutional rights to remain silent and to have the advice of counsel.

This testimony and argument related to the fact that the appellant, prior to his arrest, ended a police questioning session by asserting his right to consult with an attorney. A police officer testified at trial that the appellant said that he was going to get in touch with an attorney and then make arrangements to come back and talk with the police, but that the appellant did not do so.

■ Presenting evidence, comment, or argument that in response to official questioning or accusation a defendant has exercised his or her right to be silent or to have an attorney is fraught with the undeniable and serious danger that the jury will make the powerful inference that "an innocent person would not do such a thing." Therefore, to give teeth to these crucial constitutional protections, our jurisprudence mandates that such evidence, comment, or argument should be scrupulously avoided:

> Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

Syllabus Point 1, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977)

■ However, if a defendant himself or herself clearly "opens the door" by presenting evidence or argument about such conduct by the defendant, the trial court may allow the prosecution to inquire or otherwise touch on this subject—if it is necessary in fairness to present the prosecution's perspective, keeping in mind the need to keep the jury as much as possible from improperly drawing inferences from the accused's exercise of his rights. *See, e.g., State v. Mills*, 211 W.Va. 532, 544, 566 S.E.2d 891, 903 (2002). This, we perceive, is what happened in the instant case.

Specifically, the appellant introduced into evidence at trial a video tape of the police interview in which the appellant broke off police questioning and asserted his right to counsel; and the appellant's counsel questioned the police officer at trial about the events shown on the tape. The decision by the appellant and his counsel to play the

---

1. The appellant also references other testimony relating to statements by the victim about the appellant, arguing that this testimony should not have been admitted. We have reviewed this testimony and find that the court did not err in concluding that it met the criteria of applicable hearsay exceptions and did not offend *Crawford*.

police interview tape for the jury was a reasonable weighing of the benefit to the appellant *versus* the possible inference the jury could take from the appellant's cutting the interview short in accordance with his right to do so. Under these circumstances, it was not unfair for the trial court to allow the prosecution to also address, in a limited fashion, the events shown on the tape.

■ Moreover, after reviewing the more than 1,000 pages of transcript of the appellant's trial, we find that any evidence or comment referencing the appellant's asertion of his rights was marginal and beyond a reasonable doubt could not have had importance in the jury's decision. We therefore find no merit in this assignment of error.

## C.

The appellant's third assignment of error is that the trial court "warned" the appellant that cross-examination of a witness for the prosecution about his involvement in certain unrelated offenses might "open the door" for that witness testifying to the appellant's involvement in those offenses.

The record reflects that this issue arose in connection with the court's ruling on a prosecution motion *in limine;* and that the trial court's warning was cautionary in nature, directing both the prosecution and defense to be careful where their questions led to avoid bringing in prejudicial extraneous matters, and to come to the bench before going into uncertain areas. A complete review of this witness' testimony does not reveal any rulings by the trial court that constituted reversible error.

## D.

The appellant also asserts error in the court's instructions. We conclude that even granting the remotest inferences to the appellant, the trial court had no evidentiary basis upon which to instruct the jury on voluntary manslaughter. The court's instructions did not deviate from the standard of beyond a reasonable doubt for all elements of the offense, nor did the court err in instructing on the mercy issue. We find no instructional error.

## E.

■ Finally, the appellant asserts that there was insufficient evidence for a conviction of first-degree murder.

There was evidence from which the jury could conclude that the appellant had harbored animosity toward the victim over a lengthy period of time and had made a threat of physical harm toward the victim at knifepoint; that a subsequent encounter between the appellant and the victim further fueled the appellant's desire for retaliation against the victim, which the appellant expressed before the murder by stating that he would get the victim alone; and that the appellant had been "stalking" the victim by parking in the victim's parking lot just outside the victim's apartment in the weeks and days before the murder.

The jury also could find that appellant, whose physical appearance fit the descriptions of the shooter given by several witnesses, was known to be in the near vicinity of the shooting within minutes of the shooting; that the police subsequently obtained from the appellant's possession articles of clothing that were consistent with the description given by eyewitnesses to the shooting; that gunshot residue was found on those garments; that the appellant gave inconsistent and false statements to police in the early hours of the murder investigation; that the appellant's friend reported that approximately two weeks before the murder he had observed a large, stainless steel revolver in the appellant's apartment; that this gun fit the description of the firearm observed by an eyewitness to the shooting; and that the victim was killed by a .44 caliber magnum bullet of the type shot from this gun.

■ The standard set forth in Syllabus Point 1 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995) is:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable

doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Applying this standard, the evidence for conviction was sufficient.

### III.

This Court has carefully reviewed the entire record in the instant case. The appellant's trial counsel presented a strong challenge to every evidentiary aspect of the prosecution's case. The trial court made a number of evidentiary rulings that were favorable to the defense. The prosecution's witnesses were tested in extended and effective cross-examination. The appellant took the stand, and presented his version of events to the jury.

Upon our review of the record, we conclude that the appellant received a fair trial, and we therefore affirm the circuit court's order entering judgment of conviction.

Affirmed.