OPINION
{¶ 1} Defendant-appellant, Oran Brumley, appeals his convictions in the Butler County Court of Common Pleas, for aggravated robbery, aggravated burglary, and attempted murder, with a repeat violent offender specification. We affirm the convictions.
 {¶ 2} On May 20, 2003, around 1:15 a.m., 80-year-old Hagar Combs was attacked in his home and robbed. The attacker stabbed Combs 27 times in the neck, stomach, chest, and back. Combs was able to reach a neighbor's residence for help, and ultimately survived the near fatal injuries. Combs initially told investigators that his attacker's name was "Owen." A neighbor, Virgil Eversole, confirmed that the attacker's name was "Owen," and added that Owen had recently been paroled from prison. Upon contacting the parole authority, police learned that appellant, "Oran" Brumley, had recently been paroled after serving a portion of his prison sentence for murder. Police contacted Eversole again, who verified appellant's identity. When police drove Eversole past appellant's home, he further verified that appellant lived at that residence.
 {¶ 3} As a result of the investigation, appellant was arrested and charged with attempted murder and robbery. Upon executing a search warrant at appellant's residence, police recovered two knives taken from Combs' residence and used in the attack. Police also executed a search warrant at appellant's brother's home, and recovered a bag of bloody clothes. DNA testing revealed that bloodstains on the clothing matched both Combs and appellant.
 {¶ 4} On June 10, 2003, Eddie Brown, appellant's parole officer, visited appellant in jail to serve him with a notice that a parole violation hearing would be continued pending the disposition of the charges. After explaining why the violation hearing was to be continued and giving appellant a copy of the notice, the parole officer told appellant, "Okay, well, Mr. Brumley, you can leave." Appellant walked toward the door, stopped, turned to the officer and said, "Well, Mr. Brown, I did it." The officer responded, "Did what?" Appellant proceeded to detail the attack against Combs, although adding that Combs had first attacked him with a hammer, and explaining that he had acted in self-defense. Appellant stated that he "could have sworn I stabbed him 60 times."
 {¶ 5} On July 16, 2003, appellant was indicted on charges of attempted murder with a repeat violent offender specification, aggravated robbery, aggravated burglary, and felonious assault. Appellant moved to suppress the statements he made to the parole officer, and the trial court denied the motion. The matter proceeded to a jury trial and appellant was convicted of attempted murder, aggravated robbery, and aggravated burglary. The jury could not reach a verdict as to the felonious assault charge and it was later dismissed. The trial court determined that appellant was a repeat violent offender, and sentenced him to consecutive prison terms on the charges and repeat violent offender specification totaling 38 years. He appeals raising two assignments of error and a third supplemental assignment of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT TO OVERRULED HIS MOTION TO SUPPRESS STATEMENTS MADE TO HIS PAROLE OFFICER."
 {¶ 8} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Curry (1994), 95 Ohio App.3d 93, 96. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Curry at 96.
 {¶ 9} In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress the statements he made to his parole officer in the absence of an advisement of his constitutional rights, required by Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1062. Appellant argues that the advisement was required because his statements were elicited by his parole officer, a law enforcement official, while he was in police custody, tantamount to a custodial interrogation.
 {¶ 10} It is well-established that the duty to advise a suspect of his constitutional rights arises only when questioning by law enforcement officers rises to the level of a custodial interrogation. State v. Gumm,73 Ohio St.3d 413, 429, 1995-Ohio-24, certiorari denied (1996),516 U.S. 1177, 116 S.Ct. 1275; State v. Knuckles, 65 Ohio St.3d 494,1992-Ohio-64. An interrogation, "as conceptualized in Miranda, must reflect a measure of compulsion above and beyond that inherent in custody itself" before it will be considered a "custodial interrogation." RhodeIsland v. Innis (1980), 446 U.S. 291, 300, 100 S.Ct. 1682; State v.Tucker, 81 Ohio St.3d 431, 435, 1998-Ohio-438. For this reason, Miranda
does not operate to prevent the use of every statement made by a person while in custody. Innis at 300; see, also, Tucker at 436. Volunteered statements of any kind are not constitutionally barred, and an inmate who voluntarily turns conversation with a law enforcement officer to criminal activity has not been interrogated within the meaning of Miranda. Tucker
at 437-438. As well, follow-up questions clarifying a defendant's volunteered statement fall beyond the type of questioning Miranda
characterizes as interrogation. Id. at 437 (further interaction between defendant and guards "flowed from the initial volunteered incriminating statement").
 {¶ 11} Appellant points to the parole officer's question, "did what?" to which appellant responded with a narrative of the crime, as a custodial interrogation which required Miranda warnings to be constitutionally valid. However, immediately prior to the parole officer's question, appellant voluntarily stated "I did it." The parole officer's question was posed only as a means of clarifying appellant's volunteered statement. This follow-up question, posed to clarify appellant's volunteered statement, falls outside the type of questioningMiranda characterizes as interrogation. Id.; State v. Tolliver, Franklin App. No. 02AP-811, 2004-Ohio-1603. Consequently the trial court did not err by overruling appellant's motion to suppress the incriminating statements appellant made to his parole officer. The assignment of error is overruled.
 {¶ 12} Assignment of Error No. 2:
 {¶ 13} "APPELLANT'S SENTENCE OF MORE THAN THREE YEARS VIOLATED HIS RIGHT TO A TRIAL BY JURY."
 {¶ 14} Supplemental third assignment of error:
 {¶ 15} "THE TRIAL COURT ERRED TO IMPOSE A PERIOD OF INCARCERATION UNDER OHIO'S REPEAT VIOLENT OFFENDER STATUTE."
 {¶ 16} Because these assignments of error are related, we will address them together. Appellant asserts that the trial court erred when it imposed greater than minimum prison terms, ordered that the prison terms be served consecutively, and sentenced him as a repeat violent offender. He argues that under Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, the sentence imposed violated his right to a trial by jury because it was based upon findings made the trial court, rather than a jury.
 {¶ 17} Appellant failed to raise these issues in the trial court. Generally, an appellate court will not consider an error that was not called to the trial court's attention at a time when the trial court could have corrected the error or avoided it altogether. State v. Hill,92 Ohio St.3d 191, 196, 2001-Ohio-141. If we are to recognize this assignment of error at all, then, the error must constitute "plain error." Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Notice of plain error pursuant to Crim.R. 52(B) must be taken only with the utmost caution, only under exceptional circumstances, and only to prevent a manifest miscarriage of justice.State v. Long (1978), 53 Ohio St.2d 91, 94-95. In the complete absence of any error, we need not address the question of whether plain error exists.
 {¶ 18} This court has previously held that the Blakely requirement that sentencing facts be decided by a jury does not limit a sentencing court's discretion to impose consecutive sentences under Ohio's sentencing scheme. State v. Borders, Clermont App. No. CA2004-12-101, 2005-Ohio-4339, ¶ 15-16; State v. Collier, Butler App. No. CA2003-11-282, 2005-Ohio-944, ¶ 41; State v. Mason, Butler App. No. CA2004-06-164, 2005-Ohio-2918, ¶ 81. This court has likewise held that the imposition of a greater than minimum sentence under Ohio's sentencing scheme does not violate a defendant's right to a jury trial as contemplated by Blakely. See State v. Combs, Butler App. No. CA2005-03-047, 2005-Ohio-1923, ¶ 38; State v. Farley, Butler App. No. CA2004-04-085, 2005-Ohio-2367, ¶ 43 (Combs' holding that maximum term within statutory range does not violate the constitution "leads to the natural and necessary conclusion that the imposition of a nonminimum sentence within the statutory range is also constitutionally sound");State v. Botos, Butler App. No. CA2004-06-145, 2005-Ohio-3504, ¶ 24. Based on our holdings in these cases, we find no error in the imposition of nonminimum and consecutive sentences. Appellant's argument is without merit and his second assignment of error is overruled.
 {¶ 19} We next consider whether the trial court's determination that appellant was a repeat violent offender, and the resulting sentence on the repeat violent offender specification, was improper under Blakely.
 {¶ 20} Pursuant to R.C. 2941.149(B), the sentencing court, not a jury, must determine an offender's status as a repeat violent offender. Appellant does not dispute the factual basis for the trial court's conclusion that he is a repeat violent offender as defined by R.C.2929.01(DD),[1] but rather argues that Blakely requires that this determination be made by a jury rather than the sentencing court, and that the findings required to impose a sentence on the specification are likewise ones to be made by a jury rather than the sentencing court. We disagree, and conclude that Ohio's scheme for sentencing repeat violent offenders does not unconstitutionally infringe on a criminal defendant's right to a trial by jury.
 {¶ 21} Appellant's status as a repeat violent offender depended on his prior conviction for murder. See R.C. 2929.01(DD). At the repeat violent offender hearing the state entered into evidence an entry convicting appellant of murder, and appellant stipulated to his identity as the perpetrator of the offense. Appellant was determined to be a repeat violent offender on the basis of this prior conviction, falling squarely within the jury exception stated in Apprendi v. New Jersey (2000),530 U.S. 466, 490, 120 S.Ct. 2348, "Other than the fact of a priorconviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) The subsequent Blakely
decision did not modify or abrogate this exception. Because appellant's status as a repeat violent offender is based solely on the fact of his prior conviction, the determination need not be made by a jury. AccordState v. Adams, Lake App. No. 2003-L-110, 2005-Ohio-1107, ¶ 73.
 {¶ 22} We finally consider whether appellant's sentence on the specification violated the holding in Blakely. Before the trial court may impose an additional sentence for the repeat violent offender specification, the court must find: (1) that, considering the recidivism factors under R.C. 2929.12, the sentence is "inadequate to punish the offender and protect the public from future crime;" and (2) that, considering the seriousness factors under R.C. 2929.12, the sentence is "demeaning to the seriousness of the offense." R.C. 2929.14(D)(2)(b)(i) and (ii). The trial court made these required findings in the present matter; however, appellant contends that Blakely mandates that these findings be made by a jury.
 {¶ 23} This court has held that when a trial court makes these same findings in the context of imposing a greater than minimum sentence, a criminal defendant's right to a jury trial as contemplated by Blakely is not violated. See Combs, 2005-Ohio-1923, at ¶ 58. We reach the same conclusion in the context of sentencing a defendant on a repeat violent offender specification.
 {¶ 24} The findings that the trial court is required to make before imposing a sentence on a repeat violent offender specification are not factual findings like those at issue in Blakely, and its predecessor,Apprendi, but, rather, are findings which reflect judicial discretion. Cf. Apprendi, 530 U.S. 466, 120 S.Ct. 2348 (sentence enhanced because of the fact that it was racially motivated); Blakely, 542 U.S. 296,124 S.Ct. 2531 (sentence extended because of the fact that defendant acted with "deliberate cruelty"); see, also, U.S. v. Booker, ___ U.S. ___,125 S.Ct. 738 (sentence extended because of quantity of drugs); Jones v.United States (1999), 526 U.S. 227, 119 S.Ct. 1215 (sentence extended because of the fact that victim suffered "serious bodily injury"). The trial court is required to make its findings by applying the seriousness and recidivism factors contained in R.C. 2929.12. The statute provides that the sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C.2929.12(A). "In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." Id.
 {¶ 25} Unlike the sentencing schemes at issue in Blakely, the sentencing judge in Ohio is not required to make any finding of fact, other than the fact of a prior conviction in support of the repeat violent offender specification, in order to impose the additional sentence. The sentencing judge in Ohio is required to weigh the enumerated factors, as well as any other deemed relevant, in the exercise of its discretion. Cf. State v. Murphy, Lake App. No. 2003-L-049, 2005-Ohio-412, at ¶ 56-60, citing United States v. Harris (2002),536 U.S. 545, 562, 122 S.Ct. 2406 (holding that the sentencing factors Ohio courts are required to consider "are interposed merely to check the judicial discretion"). The Supreme Court in Booker made clear that such a sentencing procedure is constitutionally permissible, stating: "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. * * * For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 125 S.Ct. at 750, citingApprendi. We consequently hold that Ohio's procedure for imposing an additional sentence for the repeat violent offender specification is constitutionally valid under Blakely.
 {¶ 26} Appellant's right to a jury trial was not violated by the trial court's determination that he is a repeat violent offender, based on the fact of his prior conviction, nor did the imposition of an additional sentence for the repeat violent offender specification violate this right. See, also, Adams, Lake App. No. 2003-L-110, 2005-Ohio-1107; Statev. Gates, Cuyahoga App. No. 78120, 2002-Ohio-4018, at ¶ 23-25 (finding Ohio's repeat violent offender statutes constitutional under Apprendi);State v. Smith, Cuyahoga App. No. 82710, 2004-Ohio-3479, ¶ 92 (followingGates); but, see, State v. Malcolm, Cuyahoga App. No. 85351, 2005-Ohio-4133, ¶ 10 ("the requirement at R.C. 2941.149[B] that the [repeat violent offender] issue is determined by the court violatesBlakely.") Appellant's supplemental, third assignment of error is overruled.
 {¶ 27} Judgment affirmed.
Powell, P.J., and Young, J., Concur.
[1] { ¶ a} As relevant to the present case, R.C. 2929.01(DD), defines a repeat violent offender as a person about whom both of the following apply:
{¶ b} "(1) The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, * * murder * * * that involved an attempt to cause serious physical harm to a person[.]
{¶ c} "(2) Either of the following applies:
{¶ d} "(a) The person previously was convicted of or pleaded guilty to, and previously served or, at the time of the offense was serving, a prison term for, any of the following:
{¶ e} "(i) Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration * * *, a felony of the first or second degree that resulted in the death of a person or in physical harm to a person[.]"