OPINION
{¶ 1} Defendant-appellant, Darrell Botos, appeals his conviction and sentence in the Butler County Court of Common Pleas for cocaine possession and obstructing official business.
 {¶ 2} Appellant was indicted in 2004 on one count of cocaine possession (a second-degree felony) in violation of R.C. 2925.11(A) and one count of obstructing official business in violation of R.C. 2921.31(A). On April 20, 2004, a jury found him guilty as charged. The trial court sentenced appellant to seven years in prison on the possession count. The trial court also sentenced him to a concurrent jail term of 90 days on the obstruction count and ordered him to pay a mandatory fine of $7,500. On appeal, appellant raises four assignments of error.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Appellant argues that his conviction for cocaine possession and obstruction of official business was against the manifest weight of the evidence. With regard to his possession conviction, appellant essentially argues that the evidence against him was only circumstantial.
 {¶ 6} When reviewing whether a conviction is supported by the manifest weight of the evidence, this court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 7} An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 8} Both circumstantial and direct evidence inherently possess the same probative value. State v. Jenks, 61 Ohio St.3d 259, 1997-Ohio-355, paragraph one of the syllabus. A conviction based purely on circumstantial evidence is no less sound than a conviction based on direct evidence.State v. Begley (Dec. 21, 1992), Butler App. No. CA92-05-076, at 5.
 {¶ 9} Appellant was convicted of violating R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance." In turn, "`possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "That the defendant exercised dominion or control over drugs may be indirectly proven, through circumstantial evidence, even when the defendant is not present when the drugs are found." State v. Briggs (Mar. 8, 1999), Butler App. No. CA98-06-127, at 8.
 {¶ 10} Appellant was also convicted of violating R.C. 2921.31(A), which provides: "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
 {¶ 11} At trial, the state presented the testimony of the two Middletown police officers who arrested appellant, Officers Ken Rogers and Brian Taylor. Their testimony reveals that on February 6, 2004, they were in their cruiser on patrol near 1306 Fairmount Avenue because they had information of possible drug activity in that building. As the officers approached the building, they observed appellant walking down the front steps of the building. Upon seeing the officers, appellant ducked down behind a maroon vehicle parked directly in front of the building. Officer Rogers got out of the cruiser and went around the maroon vehicle where he observed appellant ducked down with his hands in his pockets. Appellant was wearing cargo pants at the time. Upon seeing the officer, appellant took off running. Officer Rogers chased appellant on foot while Officer Taylor drove the cruiser around the block to prevent appellant's escape. By the time Officer Taylor pulled up around the block, Officer Rogers was apprehending appellant.
 {¶ 12} During the chase, Officer Rogers observed appellant reaching and digging in his pockets as if he was trying to discard something. The officer, however, never saw appellant throw anything from his pockets. By then, appellant was 20 yards ahead of the officer. Appellant "rounded" a corner near the 1300 block of Woodlawn Avenue. When Officer Rogers rounded the corner, he observed appellant in a crouched position on top of a piece of plywood, with his hands near the ground, getting ready to get up and run again. Appellant took off running but was apprehended and arrested shortly after. Appellant did not cooperate and passively resisted arrest.
 {¶ 13} While Officer Taylor escorted appellant to the cruiser, Officer Rogers searched the area where he had seen appellant crouched. Underneath the plywood, the officer found two lighters and a baggie containing 17.62 grams of cocaine. Although it was wet outside, the lighters and baggie were dry. Although found under plywood near a construction site, they had neither been stepped on nor crushed.
 {¶ 14} Appellant testified on his behalf. According to appellant, he was at the building on Fairmount Avenue to look at an apartment for rent. When the officers' cruiser stopped in front of the building, Officer Rogers jumped out of it with a nightstick in his hand. Appellant stated that he was scared and began running away. Although Officer Rogers testified that he told appellant to stop during the chase, appellant denied the officer told him to stop. Appellant denied digging in his pockets during the chase. He also denied stopping or crouching on the plywood, possessing cocaine and lighters that day, or putting anything underneath the plywood. On rebuttal, Officer Rogers denied he had a nightstick that day.
 {¶ 15} Upon thoroughly reviewing the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of cocaine possession. Although no direct evidence was presented that appellant had the bag of cocaine in his possession, such can be inferred from the circumstantial evidence presented at trial. One could reasonably deduce that appellant hid the cocaine and the lighters underneath the plywood while being chased by the police. See State v. Balwanz, Belmont App. No. 02-BE-37, 2004-Ohio-1534;State v. Smith (May 24, 2001), Cuyahoga App. No. 78277.
 {¶ 16} Likewise, we cannot conclude the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of obstructing official business. A suspect who flees even after committing a minor nonarrestable offense can be convicted of obstructing official business. See State v. Bolar, Summit App. No. 22145, 2005-Ohio-592. A reasonable jury could have found that appellant, without privilege, purposefully tried to hinder, obstruct, or delay the police from investigating why he was concealing himself behind the maroon vehicle by running and failing to stop after being ordered to. See id.
 {¶ 17} Appellant's convictions for cocaine possession and obstructing official business are therefore not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "THE COURT ERRED IN FAILING TO SUPPRESS A STATEMENT MADE BY THE APPELLANT."
 {¶ 20} The record shows that as Officer Rogers was handcuffing him, appellant told the officer "I ate it." Then, as Officer Taylor was walking him to the police cruiser, appellant uttered, "All this for a nickel piece." Appellant moved to suppress both statements. Finding that both statements were made spontaneously and not in response to any questions from the officers, the trial court denied appellant's motion to suppress.
 {¶ 21} On appeal, appellant argues that the statements, which were made while he was in custody, should have been suppressed because he was not given Miranda warnings. Appellant's second assignment of error is overruled on the basis of State v. Tucker, 81 Ohio St.3d 431,1998-Ohio-438, and State v. Becherer (Feb. 14, 2000), Warren App. No. CA99-07-085 (voluntary, spontaneous statements made without police coercion or inducement do not fall within the protection of Miranda even if the defendant was under arrest and in custody).
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "THE COURT ERRED IN IMPOSING A SENTENCE ABOVE THE MINIMUM TERM."
 {¶ 24} Appellant argues that the trial court's decision sentencing him to more than the minimum prison term violates his Sixth Amendment right to a jury trial under Blakely v. Washington (2004), 542 U.S. ___,124 S.Ct. 2531. Appellant's third assignment of error is overruled on the basis of State v. Combs, Butler App. No. CA2005-03-047, 2005-Ohio-1923, and State v. Berry, 159 Ohio App.3d 476, 2004-Ohio-6027.
 {¶ 25} Assignment of Error No. 4:
 {¶ 26} "COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE AN INDIGENCY AFFIDAVIT."
 {¶ 27} Appellant asserts he is indigent and that he should not have been fined $7,500 as part of his sentence. Appellant argues he received ineffective assistance of counsel due to his counsel's failure to provide the trial court with an affidavit of indigency regarding the mandatory fine.
 {¶ 28} R.C. 2929.18(B) provides that a mandatory fine shall not be imposed upon an indigent offender if the offender alleges in an affidavit filed prior to sentencing that he is indigent and unable to pay the mandatory fine. Ohio courts have held that the failure to file an affidavit alleging a defendant's indigency and inability to pay a mandatory fine constitutes ineffective assistance of counsel only when the record shows a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed. See, e.g., State v. Powell (1992), 78 Ohio App.3d 784,State v. Huffman (Jan. 26, 1995), Cuyahoga App. No. 63938.
 {¶ 29} The record shows that appellant, age 36, cocaine free for eighteen months at the time of his trial, and with a high school education, was sentenced to seven years in prison. At trial, appellant testified that (1) during the previous two years, he and his father owned a landscaping service, (2) appellant had a number of landscaping jobs for a Butler County curator, and (3) but for his arrest in February 2004, he would have started landscaping for the curator the following month. In its sentencing entry, the trial court stated it "ha[d] considered the defendant's present and future ability to pay the amount of any sanction or fine."
 {¶ 30} Based upon the foregoing, we find that the record is insufficient to show a reasonable probability that appellant would have been found indigent for purposes of paying the mandatory fine had the affidavit of indigency been filed. See Huffman, Cuyahoga App. No. 63938,State v. Williams (1995), 105 Ohio App.3d 471. Appellant was therefore not denied effective assistance of counsel. Appellant's fourth assignment of error is overruled.
 {¶ 31} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.